IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

---

SUSAN ELIZABETH CHAMBERS,

                Plaintiff,

   v.                                   Civil Action No.
                                       5:14-CV-1334 (DEP)

CAROLYN W. COLVIN, Acting Commissioner
of Social Security,

                Defendant.

---

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF:

DOLSON LAW OFFICE              STEVEN R. DOLSON, ESQ.
126 North Street
Suite 3B
Syracuse, NY 13202

FOR DEFENDANT:

HON. RICHARD S. HARTUNIAN    HEETANO SHAMSOONDAR, ESQ.
United States Attorney for the      Special Assistant U.S. Attorney
Northern District of New York
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## ORDER

Currently pending before the court in this action, in which plaintiff seeks

judicial review of an adverse administrative determination by the Commissioner, pursuant to 42 U.S.C. § 405(g), are cross-motions for judgment on the pleadings.[1] Oral argument was conducted in connection with those motions on November 13, 2015, during a telephone conference held on the record. At the close of argument I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination did not result from the application of proper legal principles and is not supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, a transcript of which is attached and incorporated herein by reference, it is hereby

ORDERED, as follows:

1) Plaintiff's motion for judgment on the pleadings is GRANTED.

2) The Commissioner's determination that plaintiff was not disabled

---

[1] This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18 (formerly, General Order No. 43) which was issued by the Hon. Ralph W. Smith, Jr., Chief United States Magistrate Judge, on January 28, 1998, and subsequently amended and reissued by Chief District Judge Frederick J. Scullin, Jr., on September 12, 2003. Under that General Order an action such as this is considered procedurally, once issue has been joined, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

at the relevant times, and thus is not entitled to benefits under the Social Security Act, is VACATED.

3) The matter is hereby REMANDED to the Commissioner, without a directed finding of disability, for further proceedings consistent with this determination.

4) The clerk is respectfully directed to enter judgment, based upon this determination, remanding the matter to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) and closing this case.

David E. Peebles
U.S. Magistrate Judge

Dated: November 18, 2015
Syracuse, NY

```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------x
SUSAN ELIZABETH CHAMBERS,

                    Plaintiff,

vs.                                 14-CV-1334

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.
------------------------------------------x
```

*DECISION* – November 13, 2015

James Hanley Federal Building, Syracuse, New York

HONORABLE DAVID E. PEEBLES

United States Magistrate-Judge, Presiding

A P P E A R A N C E S (by telephone)

For Plaintiff:      STEVEN R. DOLSON, ESQ.
                    Attorney at Law
                    126 North Salina Street
                    Syracuse, New York 13202

For Defendant:      SOCIAL SECURITY ADMINISTRATION
                    Office of Regional General Counsel
                    26 Federal Plaza
                    New York, New York 10278
                      BY: HEETANO SHAMSOONDAR, ESQ.

*Eileen McDonough, RPR, CRR*
*Official United States Court Reporter*
*P.O. Box 7367*
*Syracuse, New York 13261*
*(315)234-8546*

1  THE COURT: I'll have to let that be the last word.
2 This is an interesting case and I, frankly, found it to be a
3 close case. I've been very meticulous in reviewing the
4 records.
5  I have before me a request for a review of a
6 determination under 42, United States Code, Section 405(g).
7 The background of this case is as follows. The plaintiff was
8 born on -- I'm sorry, I won't give the date; born in January,
9 1964. She lives in Oneida, New York, together with a
10 boyfriend and a 15-year-old daughter. She testified that she
11 has not worked since December 31st, 2011, although,
12 interestingly, she reported on May 22nd, 2012 and again on
13 September 2nd, 2012 to health care providers that she was --
14 to Dr. Zogby that she was working in a part-time light duty
15 position. That's at 470 and 474.
16  Her last position was an accounts receivable and
17 medical billing position that required her primarily to be
18 seated and did not involve significant lifting. The
19 employment was terminated after the employer, despite some
20 accommodations for plaintiff's medical conditions, found that
21 she could not perform the job. Plaintiff has also worked as
22 a gym receptionist, a pharmaceutical tester and an accounts
23 payable and accounts receivable position in a doctor's
24 office.
25  Clearly the plaintiff suffers from several

1 medically diagnosed conditions as well as some that may have
2 yet to be diagnosed. For several years she underwent --
3 suffered from chronic lumbar pain and underwent an L4-S1
4 laminectomy with fusion in May of 2009 performed by
5 Dr. Zogby. Since her surgery she's continued to treat
6 periodically to address her complaints of lower back pain,
7 including with Syracuse Orthopedic Specialists. Although
8 plaintiff's treatment regimen, frankly, with regard to the
9 back has been very conservative consisting primarily of
10 medication. She did say that that was the result of lack of
11 insurance.
12 The plaintiff clearly suffers from some sort of
13 sleep impairment disrupting her nighttime sleep and resulting
14 in daytime drowsiness. She's undergone several sleep studies
15 both locally and at the Cleveland Clinic. The results have
16 been mixed and she's been diagnosed in various ways. She was
17 referred by Dr. Shukri to Pulmonary Health Physicians where
18 she was seen by Dr. Edward Downing for a consultation
19 regarding her sleep issues. She underwent a sleep study on
20 October 25, 2011 at St. Joseph's Hospital Health Center.
21 That study reflected a significant degree of hypersomnolence
22 and resulting diagnosis of obstructive sleep apnea.
23 The plaintiff also underwent another sleep
24 consultation with Dr. Antonio Culebras, at the request of
25 Dr. Shukri again, initially on September 10, 2012. Based

1 upon his review, that doctor concluded plaintiff suffers from
2 hypertension, pitting edema and a mild form of peripheral
3 neuropathy.  It's clear that she has some sort of hypersomnia
4 or hypersomnolence, but professionals have not been able to
5 agree as to the etiology.  She has been diagnosed by some as
6 suffering from narcolepsy but others say that narcolepsy has
7 been ruled out.  Those appear at various places; 757, 718,
8 496, 500, 501 and 509.
9          Plaintiff also suffers from migraine headaches.
10 She suffers from less than one time per month but they can
11 last up to two to three days.  Although as indicated in the
12 new evidence, Exhibit 23F that was submitted to the Appeals
13 Council, it appears that they may have increased in
14 frequency.  Plaintiff has undergone significant testing,
15 including several CT head scans and brain MRIs, in an effort
16 to trace the origin of those migraine headaches, all without
17 success.
18          Plaintiff, as we discussed, has been diagnosed with
19 having fibromyalgia.  At one time testing positive for 18 out
20 of 18 possible trigger points.  She also has been diagnosed
21 as suffering from systemic lupus erythematosus, which I will
22 refer to as lupus because I can't pronounce the other one.
23 She also claims to experience tremors.  Although, again, the
24 etiology is unclear.
25          She was admitted on June 30, 2011 at St. Joseph's

1  Hospital Health Center, symptoms that included uncontrollable
2  shaking.  After a neurological consultation, however, health
3  care providers were unable to determine the cause of those
4  tremors.  The plaintiff was, therefore, discharged on
5  July 2nd, 2011 with a diagnosis that included acute
6  cerebellar ataxia, resolved, etiology unclear, with a history
7  of migraines, chronic back, irritable bowel syndrome and
8  hiatal hernia.
9              The plaintiff has taken a variety of medications
10 over time to address her conditions.  I'm not going to read
11 the list, it is extremely extensive, and includes everything
12 up to including Percocet, Ultram, and a variety of others.
13             Despite her medical conditions, plaintiff appears
14 to have been able -- has been able, as defendant's counsel
15 correctly points out, to engage in certain daily activities;
16 watching television, driving her daughter to school,
17 exercising, performing yoga, complete light housework and
18 cooking dinner.  Plaintiff filed an application for
19 disability insurance benefits on November 26, 2012 alleging
20 an onset date of June 9, 2011, although at the administrative
21 hearing she amended her onset date to December 13, 2011.
22             Following the hearing, a hearing conducted by
23 Administrative Law Judge Roxanne Fuller in June 2014, the ALJ
24 issued a decision concluding that plaintiff was not disabled
25 at the relevant times; therefore, ineligible to receive

benefits. After including new evidence submitted on behalf of the plaintiff in the record, the Social Security Administration Appeals Council denied plaintiff's request for review on September 4, 2014, making the ALJ's decision the final determination of evidence.

The ALJ's decision is fairly straightforward. She applied the familiar five-step sequential analysis for addressing claims of disability, concluded she had not engaged in substantial gainful activity since her alleged onset date, suffers from severe impairments, including lupus, lumbar spine disorder, arthritis, migraines, and sleep disorders. She concluded, however, that plaintiff's impairments did not meet or medically equal any of the listed presumptively disabling impairments set forth in the regulations.

The ALJ after surveying the available medical evidence then concluded that plaintiff was capable of performing light work subject to additional restrictions; that she should never climb ramps or stairs, never climb ladders, ropes or scaffolds, she should not be exposed to moving mechanical parts or unprotected heights, she should not operate a motor vehicle, and she is able to perform simple routine and repetitive tasks.

Applying that residual functional capacity, the ALJ concluded that the plaintiff was not capable of performing

1  her past relevant work, but after consulting with a
2  vocational expert concluded that there is available work,
3  including as a cashier II, a mail clerk and an office helper,
4  that she is capable of performing not withstanding her
5  limitations, and concluded therefore that she is not
6  disabled.
7        As you both know, my task is limited and the review
8  that I make is extremely deferential.  I must determine
9  whether correct legal principles have been applied and the
10 findings of the ALJ are supported by substantial evidence.
11       First, with regard to the new evidence.  Under the
12 Social Security regulations a claimant is clearly authorized
13 to submit new and material evidence to the Appeals Council
14 when requesting review of the ALJ's decision.  It is clear
15 that that was done and that the Appeals Council included the
16 new evidence, and most critically Exhibit 23F, in the record.
17 To be properly considered post-hearing evidence must be new
18 and material and must relate to the period on or before the
19 ALJ's decision.
20       I don't think there is any question that the
21 evidence here is new, but it is only material if it is
22 relevant to the claimant's condition and probative; in other
23 words, where there is a reasonable probability that the new
24 evidence would have influenced the Commissioner to decide the
25 claimant's application differently.

1               Let me say this.  I looked carefully to see if
2    there were any opinions of Dr. Shukri that would have
3    triggered the obligation of the Appeals Council to apply the
4    Treating Source Rule and explain why it was being rejected.
5    I didn't find any.  And I agree with -- although I agree with
6    the plaintiff's counsel that it is consistent with prior
7    records, I don't think it provides a basis to overturn the
8    Commissioner's determination.
9               In that regard, I think this is readily
10   distinguishable from Judge D'Agostino's decision, for
11   example, in *Sears against Colvin*, because that pretty clearly
12   suggested a condition that was ignored by the ALJ.
13              Non-exertional limitations, I don't have any
14   problem with the finding of the consultative examiner in
15   bending.  I agree with the Commissioner that mild bending is
16   not inconsistent with the ability to perform light work.  I
17   do have concerns, however, about the hand situation.  The
18   consultative examiner concluded that plaintiff does have a
19   limitation, it is characterized as mild, with grasping.  But
20   when you add that to the evidence, the medical evidence in
21   the record that supports plaintiff's hearing testimony that
22   she suffers from hand tremors, I was looking for a discussion
23   by the Administrative Law Judge as to how that might affect
24   the ability to engage in fingering, gross and fine
25   manipulation, and as we've discussed, there is really no

1  consideration of that in the RFC finding and no discussion
2  other than at step two, as plaintiff's counsel indicated, of
3  the tremors.  And I think that that's a major flaw in the
4  Commissioner's determination and undermines the RFC finding
5  on a course which the Commissioner's determination and the
6  vocational expert's testimony hinge.
7         So I am going to grant judgment on the pleadings to
8  the plaintiff, vacate the Commissioner's determination.
9  Quite obviously, there is not compelling evidence of
10 disabilities.  This is something that needs to be examined
11 more closely.  And after that is done with a fresh look, the
12 ALJ may or may not conclude that plaintiff is disabled at the
13 relevant times but I think it should be examined more
14 closely.
15         So again, I'm granting judgment on the pleadings to
16 the plaintiff.  I appreciate it; both of you did an excellent
17 job at both briefing the issues and arguing.  So I hope you
18 both have a good afternoon.
19         MR. DOLSON:  Thank you, Judge.
20         MR. SHAMSOONDAR:  Thank you.
21              *              *         *

C E R T I F I C A T I O N

      I, EILEEN MCDONOUGH, RPR, CRR, Federal Official Realtime Court Reporter, in and for the United States District Court for the Northern District of New York, do hereby certify that pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

_____
EILEEN MCDONOUGH, RPR, CRR
Federal Official Court Reporter